## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELLA MAE HENDERSON,** | : | **CIVIL ACTION NO. 1:07-CV-0936** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **MRS. KERNS-BARR** and | : | |
| **OFFICER RIPPEY,** | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM

This is a § 1983 civil rights action in which plaintiff Ella Mae Henderson
("Henderson"), a prisoner at the State Correctional Institution at Muncy, asserts
that two prison officials violated her due process rights and subjected her to cruel
and unusual punishment.  Defendants Hearing Examiner L.S. Kerns-Barr ("Kerns-
Barr") and Corrections Officer Brenda Rippey ("Rippey") move for summary
judgment with respect to these claims.  (See Doc. 27.)  For the reasons that follow,
the court will grant defendants' motion for summary judgment, and will close this
case.

I.    **Statement of Facts**[1]

The dispute in this case centers around an encounter between Henderson
and Rippey that occurred on the afternoon of January 23, 2006.  On that date,
Rippey was posted outside of the prison infirmary and was monitoring the inmate

---

[1]  In accordance with the standard of review for a motion for summary
judgment, the court will present the facts in the light most favorable to Henderson,
the non-moving party.  See infra Part II.

medication line.  (Doc. 30 ¶ 4; Doc. 41 ¶ 4.)[2]  When Henderson entered the line to

receive her medication, Rippey approached her to inquire about whether she was

wearing her state-issued brown t-shirt.  Henderson replied that she was and opened

her coat to show the t-shirt to Rippey.  (Doc. 41 ¶ 6; Doc. 50 at 4.)

Thereafter, the parties' accounts diverge markedly.  Henderson alleges that

she simply asked Rippey's name before calmly entering the infirmary to receive her

medication.  (Doc. 41 ¶¶ 7, 9; Doc. 1 at 2.)  Rippey alleges that Henderson ran toward

her in a threatening manner with her fists clenched.  When she came within one

foot of Rippey, Henderson screamed, "What the hell is your name?  I'm fucking sick

of this shit."  (Doc. 30 ¶ 5.)  Fearing that Henderson was about to assault her,

Rippey stepped back and assumed a defensive position.  She then gave Henderson

direct orders to retrieve her medication and return to her housing unit.  Henderson

complied only after receiving the third such order.  (Id. ¶¶ 6-7.)

Rippey memorialized her version of the events in a misconduct report that

charged Henderson with:  (1) threatening an employee or his or her family with

bodily harm, (2) using abusive, obscene or inappropriate language to an employee,

and (3) refusing to obey an order.  (Doc. 30 ¶ 8; Doc. 41 ¶ 8.)  Henderson was placed

in administrative confinement pending a disciplinary hearing on the misconduct

report.  (Doc. 30, Ex. A.)  That hearing was conducted on January 25, 2006 by

---

[2]  The court notes that the paragraphs in defendants' statement of material facts (Doc. 30) and plaintiff's counterstatement of material facts (Doc. 41) are incorrectly numbered.  The court has renumbered the paragraphs consecutively for purposes of citation.

Kerns-Barr.  (Doc. 30 ¶ 9; Doc. 41 ¶ 9.)  Henderson pled not guilty to all charges and testified on her own behalf.  (Doc. 30, Ex. C.)  Henderson also requested permission to present other witnesses, but her request was denied because Kerns-Barr determined that additional witnesses were "not necessary to establish guilt or innocence."  (Id.)  During the hearing, Kerns-Barr reviewed surveillance camera footage of the incident.  (Id.)  Finding the footage inconclusive, Kerns-Barr credited Rippey's version of the events, found Henderson guilty, and sentenced her to ninety days' disciplinary custody.  (Id.; Doc. 30 ¶ 10; Doc. 41 ¶ 10.)  Henderson appealed the decision to the program review committee and to the prison superintendent.  The decision was affirmed on both levels of review.  (Doc. 30 ¶ 11; Doc. 41 ¶ 11.)[3]

On May 23, 2007, Henderson filed the instant action, alleging that Rippey and Kerns-Barr violated her due process rights and subjected her to cruel and unusual punishment.[4]  (See Doc. 1.)  On December 7, 2007, defendants filed the instant

---

[3] In Henderson's filings in response to defendants' motion for summary judgment, she repeatedly discusses her treatment while in disciplinary custody, alleging that she was denied proper medical care and treatment for elevated blood pressure.  (See, e.g., Doc. 34 at 3; Doc. 37 at 3; Doc. 41 at 1-2; Doc. 44 at 2.)  However, Henderson has not offered any evidence to establish that either defendant was personally involved in her medical care and treatment while she was in disciplinary custody.  Absent such evidence, Henderson cannot premise her claims on these allegations.  See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) ("A[n individual] defendant in a civil rights action must have personal involvement in the alleged wrongdoing . . . .").

[4] Henderson's filings do not specify the constitutional doctrines that underpin her claims.  The court has liberally construed her complaint to assert due process and cruel and unusual punishment claims because she is proceeding without the benefit of counsel.  See Haines v. Kerner, 404 U.S. 519, 521 (1972); see also Hartmann v. Carroll, No. 04-4550, 2007 WL 1967172, at n.8 (3d Cir. July 9, 2007).

motion for summary judgment, alleging that Henderson has failed to prove that she

suffered an unconstitutional deprivation of rights.  (See Doc. 27.)  The motion has

been fully briefed and is ripe for disposition.[5]

---

[5] The court notes with interest that *pro se* plaintiff's filings repeatedly
mention evidence that plaintiff believes she could proffer in support of her claims.
(See, e.g., Doc. 1 at 2-4 (discussing other inmates who could testify on plaintiff's
behalf and video recording of the alleged incident); Doc. 34 at 4 (mentioning prison
officials who could testify on plaintiff's behalf); Doc. 37 at 3 (discussing telephone
and medical records)).  The court has advised plaintiff on four separate occasions
that she must provide such evidence in an acceptable form before the court may
consider it for purposes of resolving the instant summary judgment motion.  (See
Docs. 33, 38, 45, 47.)  Specifically, the court advised plaintiff of the following:

> Plaintiff shall be permitted to file supplemental evidence[, which] must be in
> an acceptable form, such as sworn affidavits, deposition transcripts, or other
> documentary evidence.
>
> Specific examples of evidence that plaintiff may rely upon in the instant case
> include:  (1) a sworn affidavit from plaintiff in which she attests to her
> allegations under penalty of perjury, (2) a sworn affidavit from fellow inmate
> Lyzette Haynes, whom plaintiff claims to be a witness on her behalf, and (3) a
> copy of the surveillance tape which plaintiff alleges absolves her of
> wrongdoing.
>
> When electing the types of evidence to file with the court, plaintiff must be
> aware that the court is unable to consider any evidence outside of the record
> submitted by the parties when deciding defendants' motion for summary
> judgment.  Despite plaintiff's numerous requests for the court to obtain
> various items of evidence via an independent investigation, the court is not
> charged with such investigatory duties and will only consider the evidence
> placed before it by the parties.

(See Doc. 45 at 2 n.2.)  In response to these repeated admonishments, plaintiff
provided two sworn affidavits in which she attests to her allegations under penalty
of perjury.  (See Doc. 46 at 2; Doc. 50 at 3-5.)  However, plaintiff has failed to provide
the remaining evidence referenced in her filings.  Accordingly, the court must
decide the instant motion on the basis of the record before it.

II.   <u>**Standard of Review**</u>

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  <u>See</u> FED. R. CIV. P. 56(c).  It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986); <u>see also</u> FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  <u>Pappas</u>, 331 F. Supp. 2d at 315.

III.   <u>**Discussion**</u>

Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law by state officials.  <u>See</u> 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

5

Id. Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under this section, a plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."[6] Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

In the instant case, Henderson alleges that defendants violated her due process rights and subjected her to cruel and unusual punishment. The court will address these claims *seriatim*.

## A.    Due Process

The Due Process Clause offers procedural and substantive protections against deprivations of "life, liberty, or property." U.S. CONST. amend. XIV, § 1; see Pappas, 331 F. Supp. 2d at 316. The threshold issue of due process analysis is whether a plaintiff has been deprived of one of these protected interests. Id. In the instant action, Henderson is asserting a liberty interest, namely, her interest in avoiding disciplinary custody.

While a prison disciplinary hearing may result in the loss of a constitutional liberty interest in certain circumstances, the court finds that no such deprivation resulted in the instant case. See Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454

---

[6] Defendants apparently concede for purposes of the instant motion that they were acting "under color of state law" at all times relevant hereto.

(1985).  An inmate's procedural due process rights are not triggered by a

disciplinary proceeding unless that proceeding "imposes atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life."  <u>Young</u>

<u>v. Beard</u>, 227 F. App'x 138, 141 (3d Cir. 2007) (citing <u>Sandin v. Conner</u>, 515 U.S. 472,

484 (1995)).  Such a hardship may occur where a disciplinary hearing leads to

imposition of an extended sentence.  <u>Allah v. Seiverling</u>, 229 F.3d 220, 223-24 (3d

Cir. 2000).  Where, however, an inmate's sentence is unaffected by the outcome of a

disciplinary hearing, no "atypical and significant hardship" is imposed and a liberty

interest is not triggered.  For example, the United States Court of Appeals for the

Third Circuit has held that neither fifteen months in administrative custody, <u>Griffin</u>

<u>v. Vaughn</u>, 112 F.3d 703, 708 (3d Cir. 1997), nor 270 days in disciplinary custody

amounts to a deprivation of a cognizable liberty interest where the punishments are

unaccompanied by a lengthened prison sentence, <u>Thomas v. Rosemeyer</u>, 199 F.

App'x 195, 198 (3d Cir. 2006); <u>see also</u> <u>Smith v. Mensinger</u>, 293 F.3d 641, 653 (3d Cir.

2002) (upholding dismissal of due process claim because seven months' disciplinary

confinement was insufficient to constitute a due process deprivation).  In the

instant case, Henderson received ninety days' disciplinary confinement as a result

of the hearing on her misconduct.  There is no indication in the record that this

period of confinement affected Henderson's ultimate release date.  Accordingly, the

court finds that Henderson did not possess a liberty interest in avoiding disciplinary

custody.  Defendants' motion for summary judgment will be granted with respect to

Henderson's due process claims.

Assuming *arguendo* that Henderson's sentence had been affected by her placement in disciplinary custody, her due process claim would still fail because her disciplinary hearing satisfied all constitutional mandates.  The United States Supreme Court has held that, in the context of a prison disciplinary proceeding, due process requires only that a prisoner receive:  (1) advance written notice of the charges against him or her, (2) the opportunity to call witnesses and present documentary evidence in his or her defense "when consistent with institutional safety and correctional goals," (3) a written statement by the factfinder of the evidence that formed the basis of the disciplinary action, and (4) a decision that is "supported by some evidence in the record."  Mass. Corr. Inst., 472 U.S. at 454 (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)).  In the instant case, Henderson clearly received advanced written notice of the charges against her (see Doc. 30, Exs. A, B) and a written statement from Kerns-Barr regarding the basis for her decision (see Doc. 30, Ex. C).  Moreover, Kerns-Barr's decision was supported by at least a modicum of evidence, namely, the allegations of Rippey's misconduct report.  (See id.)  Henderson was, however, denied the opportunity to present witnesses on her own behalf.  Therefore, the court must conduct an inquiry regarding whether this denial of witnesses was constitutionally sound.

A prisoner's right to call witnesses in a disciplinary proceeding is a limited one.  Woods v. Marks, 742 F.2d 770, 773 (3d Cir. 1984).  The right is limited by the "broad discretion of prison officials to refuse witness requests that conflict with the need to maintain order in the institution."  Id.  The Third Circuit has held that "it is

8

not a denial of due process to deny an inmate an opportunity to present witnesses whose testimony would be irrelevant, repetitive, or unnecessary." <u>Moles v. Holt</u>, 221 F. App'x 92, 95 (3d Cir. 2007); <u>see also</u> <u>Ponte v. Real</u>, 471 U.S. 491, 499 (1985) ("Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority."). In the action *sub judice*, Kerns-Barr's decision expressly stated that Henderson's witnesses were "[n]ot necessary to establish guilt or innocence." (Doc. 30, Ex. C.) Given the Third Circuit's holding that lack of necessity is a valid reason for declining a prisoner's request for witnesses, the court finds that Kerns-Barr did not act improperly when she denied Henderson's request. Accordingly, Henderson was afforded all necessary process during her disciplinary hearing and no Fourteenth Amendment violation resulted.

### B.   Cruel and Unusual Punishment

The Eighth Amendment protects prisoners from deprivations of the "minimal civilized measure of life's necessities." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). Satisfaction of this standard requires "an allegation that the prisoner has been denied 'basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety' from physical assault." <u>Thomas</u>, 199 F. App'x at 198 (quoting <u>Griffin</u>, 112 F.3d at 706). Placement of a prisoner in disciplinary custody does not violate the Eighth Amendment. <u>Thomas</u>, 199 F. App'x 198 (citing <u>Griffin</u>, 112 F.3d at 709 (holding that placement of a prisoner in administrative custody for fifteen months did not involve the deprivation of any basic human need

9

under the Eighth Amendment).  Because Henderson premises her Eighth

Amendment claim on such a non-actionable placement in disciplinary custody, the

court will grant defendants' motion for summary judgment with respect to this

claim.

IV.   **Conclusion**

For the foregoing reasons, the court finds that Henderson has proven neither

that she was deprived of a liberty interest protected by the Fourteenth

Amendment's Due Process Clause nor that she was subjected to cruel and unusual

punishment in contravention of the Eighth Amendment.  Accordingly, the court will

grant defendants' motion for summary judgment, and this case will be closed.  An

appropriate order shall issue.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:      May 21, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ELLA MAE HENDERSON,** | : | **CIVIL ACTION NO. 1:07-CV-0936** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **MRS. KERNS-BARR and** | : | |
| **OFFICER RIPPEY,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 21st day of May, 2008, upon consideration of the motion for

summary judgment (Doc. 27), and for the reasons set forth in the accompanying

memorandum, it is ORDERED that:

1. The motion for summary judgment (Doc. 27) is GRANTED.

2. The Clerk of Court is directed to enter JUDGMENT in favor of
   defendants and against plaintiff on all claims.

3. Any appeal from this order is DEEMED frivolous and not in good faith.
   See 28 U.S.C. § 1915(a)(3).

4. The Clerk of Court is directed to CLOSE this case.


   S/ Christopher C. Conner
   CHRISTOPHER C. CONNER
   United States District Judge